UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

---

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 24-20 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| KELVIN GREER | MAGISTRATE JUDGE HORNSBY |

---

## MEMORANDUM RULING

Before the Court is a motion to dismiss, filed by the Defendant, Kelvin Greer ("Greer"). Record Document 9. The Defendant moves to dismiss Count One of the indictment pending against him, which charges him with being a convicted felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). The Government has filed an opposition to the motion. For the reasons below, the motion is **DENIED**.

I.   Legal Standard.

Before trial, a criminal defendant may file a motion asserting that an indictment is defective because of a "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth

1

all the elements necessary to constitute the offence intended to be punished." Id. (internal marks omitted).  In considering a motion to dismiss an indictment, the Court must take the facts as set forth in the indictment as true.  United States v. Kay, 359 F.3d 738, 742 (5th Cir. 2004); see also United States v. Radley, 632 F.3d 177, 180 (5th Cir. 2011) ("The allegations in the indictment are presumed true for present purposes.").

II.    Analysis.

Here, the Defendant argues that under the recent Supreme Court case of New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 142 S. Ct. 2111 (2022), the felon-in-possession statute—18 U.S.C. § 922(g)(1)—is unconstitutional and therefore the charges against him must be dismissed.[1]  The Government opposes the motion to dismiss, arguing that Bruen did not invalidate felon-dispossession statutes and is inapplicable to the instant case.  Further, the Government contends that the Second Amendment's protections apply to law-abiding citizens, but that this Defendant does not fall within that category of protected persons.  Moreover, even if the Defendant were presumptively protected by the Second Amendment, the statute's ban on possession of firearms by convicted felons comports with history and tradition such that it passes scrutiny under Bruen.

---

[1] The Defendant also preserves a Commerce Clause issue for review.  That is, he argues that the Constitution's Commerce Clause does not give Congress the power to exercise jurisdiction over firearms merely because the guns have, at one point, crossed state lines.  However, as Greer concedes, this issue is squarely foreclosed by binding Fifth Circuit precedent, as set forth in United States v. Seekins, 52 F.4th 988 (5th Cir. 2022), and as such, he states that he merely preserves the issue for review.  Because this Court is required to adhere to Seekins, this argument of alleged unconstitutionality is denied but preserved for review.

Greer argues that the charges against him must be dismissed because § 922(g)(1) is unconstitutional under the Second Amendment. The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. As relevant here, § 922(g)(1) makes it unlawful for anyone "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(1).

The Supreme Court has examined the scope of the Second Amendment and the permissible limitations thereon on several occasions. In <u>District of Columbia v. Heller</u>, 128 S. Ct. 2783 (2008), the Court confronted a law which banned handgun possession in the home. After conducting a thorough textual and historical analysis of the scope of the Second Amendment, the Court concluded that the Second Amendment codified an individual preexisting "right to keep and bear arms." <u>Id.</u> at 2797-98. The <u>Heller</u> Court struck down the District of Columbia law, which implemented a total ban on the possession of a handgun in the home, based on the Second Amendment's guarantee of the right to bear arms. <u>Id.</u> at 2798, 2821. However, the Court was quick to caution that the Second Amendment right to keep and bear arms was "not unlimited" and that certain restrictions on that right were permissible and in keeping with history and tradition. <u>Id.</u> at 2799, 2816-17.

More recently, in <u>New York State Rifle & Pistol Association v. Bruen</u>, the Supreme Court reexamined the Second Amendment's right to keep and bear arms. <u>Bruen</u>, 142 S. Ct. 2111. There, the Court addressed the constitutionality of a New York licensing scheme which allowed officials to deny concealed-carry permits even though an applicant had satisfied the permit's threshold criteria. In <u>Bruen</u>, the Court set forth the proper framework to analyze Second Amendment challenges:

> [W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'

<u>Id.</u> at 2126 (quoting <u>Konigsberg v. State Bar of Cal.</u>, 366 U.S. 36, 50 n.10 (1961)).

<u>Bruen</u> explained that "[w]hen confronting such present-day firearm regulations, this historical inquiry that courts must conduct will often involve reasoning by analogy" which "requires a determination of whether the two regulations are 'relevantly similar.'" <u>Id.</u> at 2132. To establish the challenged regulation is "consistent with this Nation's historical tradition," the government must "identify a well-established and representative historical analogue, not a historical twin. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." <u>Id.</u> at 2133. "Whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are central considerations when engaging in an analogical inquiry." <u>Id.</u> (internal marks omitted).

A.     The People

The first step of the Bruen inquiry is to determine whether the Second Amendment covers the Defendant's conduct. Greer asserts in a conclusory fashion that "it is clear that the defendant is one of the 'the people' under the Second Amendment's plain text . . . [because] the Second Amendment right 'belongs to all Americans.'" Record Document 9, p. 3. The Government, on the other hand, argues that the Second Amendment extends its rights only to "the people," who are law-abiding, responsible citizens. Record Document 20, p. 6. The Court finds that both Heller and Bruen included the qualifier "law-abiding" for those who enjoy the protection of the Second Amendment. See Heller, 554 U.S. at 635 (holding the Second Amendment confers the "right of law-abiding, responsible citizens to use arms in defense of hearth and home"); Bruen, 142 S. Ct. at 2134 (explaining that petitioners were "two ordinary, law-abiding, adult citizens" protected as "people" by the Second Amendment).

The Fifth Circuit's own post-Bruen jurisprudence bolsters this conclusion. In United States v. Rahimi, the Fifth Circuit held that the domestic violence subsection of § 922(g) is unconstitutional. Rahimi, 61 F.4th 443, cert. granted, 143 S. Ct. 2688 (2023). In that case, the court's analysis of the constitutionality of the statute focused on the fact that Rahimi, though subject to the § 922(g) ban, was not a convicted felon. The Fifth Circuit agreed that "Heller and Bruen also refer to 'law-abiding, responsible citizens' in discussing the amendment's scope." Id. at 451. In analyzing the matter, Rahimi held that this

> leads us to conclude that, in context, Heller simply uses "law-abiding, responsible citizens" as shorthand in explaining that its holding (that the amendment codifies an individual right to keep and bear arms) should not "be taken to cast doubt on longstanding prohibitions on the possession of

5

> firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings" . . . . In other words, Heller's reference to "law-abiding, responsible" citizens meant to exclude from the Court's discussion groups that have historically been stripped of their Second Amendment rights, i.e., groups whose disarmament the Founders "presumptively" tolerated or would have tolerated. ("We identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive."). Bruen's reference to "ordinary, law-abiding" citizens is no different.

Id. at 452 (cleaned up). Because Rahimi was not a convicted felon, he—unlike a convicted felon— was presumptively protected by the Second Amendment.

The Fifth Circuit's opinion in United States v. Daniels lends further support to the conclusion that the Second Amendment's restriction on convicted felons is constitutional post-Bruen. United States v. Daniels, 77 F.4th 337 (5th Cir. 2023). In Daniels, the defendant was charged with violating § 922(g)(3) because he was an unlawful user of marijuana who was in possession of a firearm. The Daniels court addressed Bruen, Rahimi, and the pressing question of who is included within the Second Amendment's protections:

> Rahimi held that citizens accused of domestic violence still had Second Amendment rights. It reasoned that when Heller and Bruen used the phrase "law-abiding," it was just "short-hand" to "exclude from the . . . discussion" the mentally ill and felons, people who were historically "stripped of their Second Amendment rights." All others are presumptively included in the Second Amendment's ambit. Because Daniels is not a felon or mentally ill, Rahimi's treatment of the "law-abiding" moniker suggests that he has presumptive Second Amendment rights as well.

Id. at 343 (citations omitted).

Even though Daniels and Rahimi invalidated other subsections of § 922(g), those opinions are distinguishable and thus do not compel the same result for the felon-in-possession provision of § 922(g)(1). The Court concludes that Greer, who, unlike Rahimi

6

and Daniels, is a convicted felon, is not facially protected by the Second Amendment. See also United States v. Gipson, 2024 WL 150339, *4 (W.D. La. Jan. 12, 2024) (holding that convicted felons are not included within the protection of "the people"); United States v. Martin, 2024 WL 129337, *6 (W.D. La. Jan. 11, 2024) (collecting cases).  Because the Defendant failed to satisfy the first step of Bruen, his motion must be denied.

  B.  Historical Tradition

However, even if this Court were to address the second prong of Bruen to determine whether § 922(g)(1) is supported by history and tradition, the Court finds that it is and thus would uphold the ban.  "[I]f there is a history and tradition of keeping guns from those engaged in criminal conduct, then the law[] here [is] constitutional whether the Second Amendment right belongs to all Americans . . . or just to ordinary, law-abiding citizens." Fried v. Garland, 640 F. Supp. 3d 1252, 1259 (N.D. Fla. 2022) (quoting Heller, 554 U.S. at 581; Bruen, 142 S. Ct. at 2122) (internal marks omitted).

The second prong of Bruen requires the Court to determine whether the challenged regulation is consistent with the country's historical tradition of firearm regulation.  To establish that a regulation comports with history and tradition, the Government need not identify "a historical twin." See Bruen, 142 S. Ct. at 2133 ("analogical reasoning requires only that the government identify a well-established and representative historical analogue, not a historical twin. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster."). The Court finds that the regulation here is consistent with historical regulations on the right to possess firearms and thus passes constitutional muster.  Indeed, the Government's

opposition brief has sufficiently established that the ban in § 922(g)(1) is consistent with the nation's historical tradition of dispossessing felons of firearms. See Record Document 20, pp. 10-16. Given the historical support cited by the Government, § 922(g)(1) passes constitutional muster under Bruen. This conclusion is nearly unanimous in district courts within the Fifth Circuit. See Montes v. United States, 2023 WL 3688015, *1 (S.D. Tex. May 26, 2023) (collecting cases); United States v. French, 2023 WL 7365232, *4 (W.D. La. Nov. 7, 2023); United States v. Morgan, 2024 WL 150340, *5 (W.D. La. Jan. 12, 2024); United States v. Schnur, 2023 WL 4881383, *10 (S.D. Miss. July 31, 2023); United States v. Gwinn, 2023 WL 8242711, *1 (S.D. Miss. Nov. 28, 2023).

Furthermore, in Heller, the Supreme Court emphasized that despite its holding that the Second Amendment conferred an individual right to bear arms, it was not undertaking "an exhaustive historical analysis . . . of the full scope of the Second Amendment, [and that] nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." Heller, 128 S. Ct. at 2816–17. As the Court explained, "We identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive." Id., n.26. In McDonald v. Chicago, the Supreme Court reaffirmed the sentiment that Heller was not meant to create doubt about the regulations that prohibited firearm possession by certain groups of people or in certain places. McDonald, 130 S. Ct. 3020, 3047 (2010). Against this backdrop, the

Court agrees that § 922(g)(1) is a constitutional restriction consistent with historical tradition.

    C.    Binding Precedent Forecloses the Challenge

Furthermore, there is the more pressing question of whether this Court can consider the constitutionality of § 922(g)(1) when binding Fifth Circuit precedent affirming the ban on felons in possession of firearms has not been overturned. Prior to <u>Bruen</u>, the Fifth Circuit repeatedly upheld the constitutionality of § 922(g)(1). In <u>United States v. Darrington</u>, which involved such a challenge, the court rejected the defendant's argument that the statutory ban was unconstitutional, holding that "prohibitions on the ownership of firearms by felons are not considered infringements on the historically understood right to bear arms protected by the Second Amendment." <u>Darrington</u>, 351 F.3d 632, 633-34 (5th Cir. 2003); <u>see also</u> <u>United States v. Anderson</u>, 559 F.3d 348 (5th Cir. 2009); <u>United States v. Powell</u>, 574 F. App'x 390 (5th Cir. 2014). The <u>Darrington</u> line of cases, affirming the constitutionality of § 922(g)(1), has not been expressly overruled by the Fifth Circuit. Indeed, the Fifth Circuit recently addressed the question of § 922(g)(1)'s constitutionality in <u>United States v. Jones</u> where it rejected a post-<u>Bruen</u> challenge on plain error review:

> Before <u>Bruen</u>, [in <u>Darrington</u>,] this court held that § 922(g)(1) does not violate the Second Amendment. And in his concurring opinion in <u>Bruen</u>, Justice Kavanaugh—quoting <u>District of Columbia v. Heller</u> . . . and <u>McDonald v. Chicago</u> . . . —stated: "[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill." . . . .
>
> This court has not yet addressed the impact of <u>Bruen</u> on the constitutionality of § 922(g)(1) in a case in which the issue was preserved in the district court. In the plain error context, "a lack of binding authority is often dispositive." While Jones need not show that his specific challenge has been addressed in a prior decision, "he must at least show error in the straightforward

9

> applications of existing cases." Arguments that require the extension of existing precedent cannot meet the plain error standard.

United States v. Jones, 88 F.4th 571, 573–74 (5th Cir. 2023) (internal citations omitted). And, as Jones further explained, "Given the absence of binding precedent holding that § 922(g)(1) is unconstitutional, and that it is unclear that Bruen dictates such a result, we have rejected plain-error challenges to § 922(g)(1) under Bruen in several unpublished opinions." Id. (collecting cases).

District courts are required to apply circuit precedent unless that precedent has been overruled. Under the rule of orderliness, one panel of the appellate court "may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our en banc court." Jacobs v. Nat'l Drug Intel. Ctr., 548 F.3d 375, 378 (5th Cir. 2008). As a sister court has explained,

> A Supreme Court decision may explicitly or implicitly overrule circuit precedent. "Fifth Circuit precedent is implicitly overruled if a subsequent Supreme Court opinion 'establishes a rule of law inconsistent with' that precedent." It may also be implicitly overruled if "'an intervening Supreme Court decision fundamentally change[s] the focus' of the relevant analysis." However, an intervening Supreme Court decision that "merely illuminates" prior precedent does not overrule that precedent. For an intervening Supreme Court decision to disturb circuit precedent, the decision "must 'unequivocally' overrule prior precedent."

Martin, 2024 WL at *5 (cleaned up).

Significantly, in the context of a constitutional challenge to § 922(g)(1), the Fifth Circuit more recently affirmed this proposition in United States v. Jackson. Jackson, 2023 WL 8804575, at *1 (5th Cir. Dec. 20, 2023). There, it explained that "absent a Supreme Court decision or our court sitting en banc and providing an 'intervening contrary or superseding decision,' a panel of this court 'cannot overrule a prior panel's decision.'" Id.

(citing Burge v. Par. of St. Tammany, 187 F.3d 452, 466 (5th Cir. 1999)). Jones and Jackson confirm that the Fifth Circuit has not concluded that Bruen unequivocally overruled Fifth Circuit precedent on the constitutionality of § 922(g)(1) and, moreover, that the appellate court believes it is unclear whether Bruen would even compel such a result. Accordingly, this Court concludes that it remains bound by prior Fifth Circuit precedent which upholds the ban in § 922(g)(1). It would deny the Defendant's motion on those grounds alone.

III.  Conclusion.

For the foregoing reasons, the Court finds that 18 U.S.C. § 922(g)(1) is not an unconstitutional restriction on the Second Amendment. Accordingly, the Defendant's motion to dismiss [Record Document 9] be and is hereby **DENIED**.

**THUS DONE AND SIGNED** this 12th day of April, 2024.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE

11